452 P.2d 478

**STATE of New Mexico ex rel. S. E. REYNOLDS, State Engineer, Plaintiff-Appellee,**

v.

**SOUTH SPRINGS CO. et al., Defendants-Appellants.**

**No. 8713.**

Supreme Court of New Mexico.

Feb. 24, 1969.

Rehearing Denied April 10, 1969.

Sanders & Bruin, Roswell, for appellants.

Boston E. Witt, Atty. Gen., F. Harlan Flint, Special Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

TACKETT, Justice.

This suit was brought in the District Court of Chaves County seeking a declaratory judgment. The court, sitting without a jury, considered the stipulations and testimony and entered judgment for plaintiff, declaring the defendants had lost their water rights by abandonment, forfeiture or nonuse.

The action was filed May 25, 1967. The State of New Mexico, ex rel. the State Engineer, alleged that defendants were owners of the NE¼ SE¼ and SE¼ NE¼ Sec. 22, and that portion of the N½ and N½S½, Sec. 23, lying west of the railroad, all within Twp. 11 S., R. 24 E., containing approximately 317 acres; that the lands had a valid existing water right which was adjudicated in United States v. Hope Community Ditch et al, No. 712 Equity, U.S.D. C. N.M., referred to as the Hope Decree

decided in 1933; that in 1933 water rights arose out of the South Springs River, which was a tributary of the Pecos River; that predecessors in title of defendants used water from the South Springs River so long as it was available in quantities sufficient for irrigation purposes; that some time preceding 1933, the artesian head generally began to lower and the South Springs River gradually ceased to flow; that since 1933 the South Springs River has not produced water to supply the subject lands with water to which the lands were entitled under the Hope Decree; that no water has been applied to the subject lands since 1933; that water of the Roswell Underground Water Basin, as declared by the State Engineer, is interrelated with water used and claimed by defendants and their predecessors from the South Springs River under the Hope Decree; that the adjudication suit commenced in 1956, styled State of New Mexico, ex rel. S. E. Reynolds v. L. T. Lewis, et al., No. 20294, Chaves County District Court, did not include these defendants as parties; that at the time of publication of hearing on said suit these defendants filed a motion to intervene, which was allowed by the court; that it was agreed the issues raised by defendants' motion could more properly be considered in the declaratory judgment action and intervenors thereafter dismissed their motion to intervene without prejudice; that the State Engineer and his predecessors in office prior to November 26, 1958, which is the date of Templeton v. Pecos Valley Artesian Conservancy District, 65 N.M. 59, 332 P.2d 465 (1958), took the position, which was generally known to all water users in the Roswell Underground Water Basin, that his office would not allow any owner of surface water rights to drill wells for the purpose of following their water rights to their original sources.

The sole issue to be determined in this case is whether or not appellants' water rights have been forfeited or abandoned by nonuse under § 75–5–26, N.M.S.A., 1953

Comp., as the same existed prior to the 1965 amendment, which reads as follows:

"When the party entitled to the use of water fails to beneficially use all or any part of the water claimed by him, for which a right of use has vested, for the purpose for which it was appropriated or adjudicated, except the waters for storage reservoirs, for a period of four [4] years, such unused water shall revert to the public and shall be regarded as unappropriated public water; Provided, however, that forfeiture shall not *necessarily* occur if circumstances beyond the control of the owner have caused nonuse, such that the water could not be placed to beneficial use by diligent efforts of the owner." (Emphasis added)

Appellants contend under point I that the trial court erred as a matter of law in holding that appellants have abandoned or forfeited their water rights by nonuse by reason of their failure to undertake any diligent efforts to obtain the use of underground water for the subject lands since 1933.

Under point II appellants contend:

"THE COURT'S FINDINGS OF FACT NOS. 8, 10, 11 AND 14 ARE NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND DO NOT JUSTIFY A CONCLUSION THAT THE DEFENDANTS HAVE ABANDONED OR FORFEITED THEIR WATER RIGHTS."

■ We will not go to great length in first disposing of point II. A review of the record impels the court to the conclusion that point II is not well taken, as the findings of fact and conclusions of law made by the trial court are supported by clear, convincing and substantial evidence. Without the necessity of citing authorities, this court has repeatedly held that, if findings of fact and conclusions of law are supported by the evidence, they will not be disturbed.

Appellants contend that the water rights established by the Hope Decree were not abandoned, as there was no intent to aban-

don the rights, citing 2 Kinney on Irrigation and Water Rights, 2d Ed., 2012, § 1116 (1912), in part as follows:

"As to whether or not a water right, the water itself, the ditch, canal, or other works have actually been abandoned or not, depends upon the facts and circumstances surrounding each particular case, tending to prove the essential elements of an abandonment, namely, the intent and the acts of the party charged with abandoning such a right. * * * Abandonment is most usually proved by evidence of the failure of the party charged to use the right, or the water, or to keep the works necessary for the utilization of the water in repair; and if such nonusage or neglect is continued for an unreasonable period, it may fairly create the presumption of the intention to abandon; * * *."

■ In this case, the water rights had not been utilized for some 32 years and the ditches and canals carrying the flow of water from the South Springs River had not been maintained; roads had been constructed across some of the ditches; and some of the ditches had been closed and houses built thereon, or in close proximity thereto. The failure to use a water right for an unreasonable time is evidence of the intention to abandon it and, in the instant case, no action was taken by appellants to utilize the water rights, if any existed, from 1958 until 1965. Our statute, § 75–5–26, supra, has a four-year period of limitation and, if nothing is done within that limitation, such unused water is reverted to the public and shall be regarded as unappropriated public water.

Further, Kinney, supra, at 2020–2021, § 1118, distinguishes abandonment from forfeiture:

"Water rights, ditches, and canals, and other works, together with the easements over the lands of others for the same, may be lost by forfeiture. Although the terms 'abandonment' and 'forfeiture' are oftentimes used interchangeably, even by the courts, upon the subject of the loss

of water rights, and other rights used in connection therewith, there is a decided distinction in their legal significance, and one which, in view of the forfeiture clauses enacted by recent legislation, should be observed. While, upon the one hand, abandonment is the relinquishment of the right by the owner with the intention to forsake and desert it, forfeiture, upon the other hand, is the involuntary or forced loss of the right, caused by the failure of the appropriator or owner to do or perform some act required by the statute. Forfeiture is a 'punishment annexed by law to some illegal act or negligence in the owner of lands, tenements, or hereditaments, whereby he loses all his interests therein.'

"The element of intent, therefore, so necessary in the case of an abandonment, is not a necessary element in the case of forfeiture. In fact, a forfeiture may be worked directly against the intent of the owner of the right to continue in the possession and the use of the right. Therefore forfeiture as applied to water rights and other rights in this connection is the penalty fixed by statute for the failure to do, or the unnecessary delay in doing, certain acts tending toward the consummation of a right within a specified time; or, after the consummation of the right, the failure to use the same for the period specified by the statute. * * *"

By the forfeiture of the rights which are claimed by appellants, but who failed to use them, the policy of our constitution (Art. XVI, §§ 1, 2 and 3) and statutes (§ 75–11–2, N.M.S.A., 1953 Comp.) is fostered, and the waters made to do the greatest good to the greatest number. This is on the theory that the continuance of the title to a water right is based upon continuing beneficial use, and where the right is not exercised for a certain period of time (four years), the statute declares that the right to the unused portion is forfeited. See Comments, Water Rights, Failure to Use, Forfeiture, 6 Natural Resources J. 127 (1966).

■ We regret that forfeiture and abandonment have been used interchangeably, as the element of intention is required in the doctrine of abandonment. This is not so in forfeiture. Kinney, supra.

■ This court, in State ex rel. Erickson v. McLean, 62 N.M. 264, 308 P.2d 983 (1957), construed § 75–11–8, N.M.S.A., 1953 Comp., a similar statute dealing with underground water rights, as a strict forfeiture statute, and cited Kinney, supra, to the effect that such forfeiture is a "punishment annexed by law to some *illegal act*," as abandonment of a right is present only when intentional relinquishment occurs. In McLean it was concluded that an appropriative right is lost by a non-beneficial user for a period of four years. In the case before us, if appellants obtained appropriative rights to the use of the water in question, any such rights have now become lost by continuous nonuse for more than four years, as shown by the evidence, and such rights (if any) are forfeited.

In Green Valley Ditch Co. v. Frantz, 54 Colo. 226, 129 P. 1006 at p. 1008 (1913), quoting with approval from North American Exploration Co. v. Adams, 104 F. 404 (8th Cir.1900), it is stated:

"* * * 'The abandonment of the right to divert and use the waters of a stream is not different in its nature or character from the renunciation of any other right which is asserted and maintained by its use. It may be express or implied. It may be effected by a plain declaration of an intention to abandon it; and it may be inferred from acts or failures to act so inconsistent with an intention to retain it that the unprejudiced mind is convinced of the renunciation.' "

■ In State ex rel. Reynolds v. Fanning, 68 N.M. 313, 361 P.2d 721 (1961), this court held that a well drilled unlawfully and used for irrigation for a period in excess of the four-year statutory period resulted in the forfeiture of the water right. That case seems to confirm the coexistence of the doctrine of statutory forfeiture and

common-law abandonment. The court distinguished forfeiture from abandonment in that there had been use and irrigation from an illegal well for more than four consecutive years and the water right, if it ever existed, had been forfeited, reaffirming the doctrine laid down in State ex rel. Reynolds v. Mitchell, 66 N.M. 212, 345 P.2d 744 (1959). It is the duty of the owner of a water right to comply with the law and the forfeiture of the right occurred without regard to the intention of appellants or their predecessors in title. State ex rel. Reynolds v. Fanning, supra, 68 N.M. at 317, 361 P.2d 721.

The cases of New Mexico Products Co. v. New Mexico Power Co., 42 N.M. 311, 77 P.2d 634 (1937), and Pioneer Irrigating Ditch Co. v. Blashek, 41 N.M. 99, 64 P.2d 388 (1937), touched lightly on the question of abandonment and forfeiture, and did little to clarify the distinction between the two terms. The facts in those two cases, however, are decidedly different than the facts in the case before us.

The case of Yeo v. Tweedy, 34 N.M. 611, 286 P. 970 (1929), announces the purposes of our water laws as being intended to encourage use and discourage nonuse or waste. It is stated therein that, under the prior appropriation doctrine of water rights applicable in New Mexico, "nonuse involves forfeiture."

In Chavez v. Gutierrez, 54 N.M. 76, 213 P.2d 597 (1950), there was no constructive abandonment of the water rights, but rather nonuse was caused by droughts producing a water shortage; however, the ditch was used when water was available.

In the case before us, the ditches (if any) were not usable and appellants made no effort to recover their water rights for a period from 1958 to 1965, showing a definite lack of diligence.

■ In New Mexico, where the statute excuses forfeiture when "circumstances beyond the control of the owner have caused nonuse," the trier of fact must weigh the evidence in each case to determine whether a sufficient showing of excuse for nonuse has been made. The trial court, in the instant case, was trying both issues, forfeiture and abandonment, as nonuse alone is not sufficient to show intent to abandon.

In Utt v. Frey, 106 Cal. 392, 39 P. 807 (1895), and Seiber v. Frink, 7 Colo. 148, 2 P. 901 (1884), it was held that nonuse is competent evidence of intent to abandon.

■ After a long period of nonuse, the burden of proof shifts to the holder of the right to show the reasons for nonuse. Mountain Meadow Ditch & Irrigation Co. v. Park Ditch & Reservoir Co., 130 Colo. 537, 277 P.2d 527 (1954).

Mason v. Hills Land & Cattle Co., 119 Colo. 404, 204 P.2d 153 (1949), is very illuminating on the question of abandonment. In Mason, plaintiff in error petitioned to change the point of diversion of the Accommodation Ditch with its decreed priority for 12.5 cubic feet of water per second of time of date July 15, 1887. Defendants in error joined in protest, asserting abandonment both of the Accommodation Ditch and its priority. Upon trial of the issue, the court found in favor of protestants, that the ditch and its priority had been abandoned and enjoined petitioner from diverting water in virtue of said priority. The ditch in question had not been in use for many years. The court stated:

"We conclude from these statements that while the burden of proof of intent to abandon is on him who asserts it, yet such intent may be proved by evidence of acts and failure to act as well as by mere words; that nonuse constitutes such failure to act; that proof of nonuse for an unreasonable period establishes a presumption of abandonment and is prima facie proof thereof; that nonuse for the period here proved is an unreasonable period; that to rebut the presumption of abandonment arising from such long period of nonuse, there must be established not merely expressions of desire or hope or intent, but some fact or condition excusing such long nonuse. * * *"

In other Colorado cases, the court held that periods of forty, thirty and eighteen years constituted "unreasonable periods of nonuse and raised a strong presumption of abandonment." Northern Colorado Irr. Co. v. Burlington Ditch, Reservoir & Land Co. et al., 74 Colo. 159, 219 P. 1071 (1923); South Boulder Canon Ditch Co. v. Davidson Ditch & Reservoir Co. et al., 87 Colo. 391, 288 P. 177 (1930). We are duly impressed with the reasoning of Commonwealth Irr. Co. v. Rio Grande Canal Water Users' Ass'n, 96 Colo. 478, 45 P.2d 622 (1935), wherein the relationship of nonuse and intent to abandon a water right is more clearly explained. The court, 45 P.2d at 623, said:

"* * * But where by clear and convincing evidence it is shown that for an unreasonable time available water has not been used, an intention to abandon may be inferred in the absence of proof of some fact or condition excusing such nonuse. * * *"

It is conceded by appellee that, under New Mexico law, the failure of water to reach the point of diversion of an appropriator, who is ready and willing to put the water to use, excuses forfeiture by nonuse. Chavez v. Gutierrez, supra. This was recognized by the trial court; however, prior to 1958, when Templeton v. Pecos Valley Artesian Conservancy District, supra, was decided, appellants could not be excused merely because the state engineer's office took the position that owners of surface rights would not be permitted to drill wells to follow their rights to the source, compare State ex rel. Reynolds v. McLean, 76 N.M. 45, 412 P.2d 1 (1966), and neither could they be excused after 1958 and the decision in Templeton for not taking any action under the law to obtain the water from its source.

The trial court's findings and conclusions are supported by substantial evidence. Finding no error, the judgment appealed from is affirmed.

It is so ordered.

MOISE and CARMODY, JJ., concur.