452 P.2d 185

MIDWEST VIDEO, a Division of Home Theaters, Inc., an Arkansas Corp., and Black Hills Video Corporation, a corporation, Plaintiffs-Appellees,

v.

Hon. Jack M. CAMPBELL, Governor of New Mexico, Hon. Boston E. Witt, Attorney General of New Mexico, Hon. George Richard Schmitt, Assistant Attorney General of New Mexico, Defendants-Appellants.

No. 8671.

Supreme Court of New Mexico.

March 24, 1969.

Boston E. Witt, Atty. Gen., David R. Sierra, Asst. Atty. Gen., Santa Fe, David L. Norvell, Clovis, for appellants.

Lynell G. Skarda, Clovis, Moses, McClellan, Arnold, Owen & McDermott, Little Rock, Ark., for appellees.

OPINION

COMPTON, Justice.

Plaintiffs brought this action against the defendants, challenging the constitutionality of § 67–7–13(m), N.M.S.A. 1953, as to them, for injunctive relief and for a declaratory judgment. From an adverse judgment, the defendants appeal.

The action was brought here pursuant to an order of a three-judge court in United States District Court for the District of New Mexico. Midwest Video Corporation v. Campbell, 250 F.Supp. 158 (D.N.M. 1965). That court postponed and stayed a similar action for a reasonable time pending the termination of proceedings in the state courts of New Mexico in order for the parties to secure an interpretation of the "price advertising" statute as applied to plaintiffs before passing on its constitutionality. We expressly note that plaintiffs are exposing their federal claims here for the purpose of complying with Government & Civic Employees Organizing Committee, C.I.O. v. Windsor, 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894, so that this court may interpret the statute in the light of the constitutional objection heretofore presented to the three-judge federal court.

The statute in part prohibits:

"(m) Advertising by any means whatsoever the quotation of any prices or terms on eyeglasses, spectacles, lenses, frames or mountings, or which quotes discount to be offered on eyeglasses, spectacles, lenses, frames or mountings or which quotes 'moderate prices,' 'low prices,' 'lowest prices,' 'guaranteed glasses,' 'satisfaction guaranteed,' or words of similar import."

The appeal turns on the meaning of the word "advertising" as used in the statute. The court found and concluded that the plaintiffs are not "advertising" and thus not violating § 67–7–13(m), N.M.S.A.1953. The court further concluded that the enforcement of § 67–7–13(m), N.M.S.A.1953, as to these plaintiffs is a denial of equal

protection of the laws making such unconstitutional and void under the equal protection clause of Art. II, § 18, of the New Mexico Constitution, and that the defendants should be permanently enjoined from enforcing § 67–7–13(m), N.M.S.A.1953, as to these plaintiffs.

■ We think the ruling of the court that plaintiffs are not "advertising" was correct. The finding has ample support in the evidence. The plaintiffs are corporations with their principal offices in Little Rock, Arkansas. Plaintiff Midwest owns and operates a community antenna television system in Clovis, New Mexico. Midwest's Clovis CATV system primarily receives television signals from three FCC licensed stations in Amarillo, Texas, which is located approximately one hundred miles from Clovis. These regularly broadcast television signals are received at a FCC licensed microwave station located at Friona, Texas, owned by the plaintiff, Black Hills Video, and relayed by its microwave facilities to Midwest at Clovis. At Clovis the signals are converted and simultaneously circulated by cable to some 5,600 television sets of Midwest's subscribers. Texas does not have a statute prohibiting "price advertising" of optometry services and supplies, and as a result all three of the Amarillo stations carried by the plaintiff Midwest's CATV system in Clovis broadcast "price advertisements" of Amarillo optical firms.

The defendants argue that the trial court erred in finding that the plaintiffs are not advertising within the purview of the statute. In common usage, "to advertise" has a variety of meanings, the broadest being "to give notice to" or "to make known to." Webster's Third New International Dictionary (1961). Appellants urge us to adopt this definition and, thus, to determine that any activity which in any way contributes to the dissemination of proscribed information violates § 67–7–13(m), N.M.S.A.1953. Appellees answer by calling to our attention several cases from other jurisdictions in which this broad meaning has been held inapplicable. See State v. Guardian Foundation of Texas, 128 S. W.2d 880 (Tex.Civ.App.1939); Planned Parenthood Committee of Phoenix v. Maricopa County, 92 Ariz. 231, 375 ,P.2d 719. They assert that "advertising" is properly construed to mean "any form of public announcement *intended* to aid directly or indirectly in the sale of a commodity" (emphasis added), Webster's New International Dictionary (2d Ed. 1953), (this definition has been omitted from Webster's Third New International Dictionary, supra), and that like hotel owners who install TV sets for their patrons, or perhaps owners of large apartment houses who install a single TV aerial for all the apartments, they have no intention whatsoever with respect to advertising.

Both parties cite and rely to some extent on New Mexico Board of Examiners in Optometry v. Roberts, 70 N.M. 90, 370 P. 2d 811, aff'd sub nom., Head v. New Mexico Board of Examiners in Optometry, 374 U.S. 424, 83 S.Ct. 1759, 10 L.Ed.2d 983. In that case we affirmed a trial court determination that New Mexico radio stations and a New Mexico newspaper were "aiding and abetting and encouraging the violation" of § 67–7–13(m), N.M.S.A.1953, by accepting and publishing price advertising from an optometrist in Texas. The present case is distinguishable because in that case the optometrist had placed his advertising directly with the communications media, whereas here there is no dealing between them. As previously noted, Midwest and Black Hills do not sell advertising space. Neither do they receive any compensation whatsoever from advertisers or broadcasters for the electronic service they perform. They are supported entirely by the sale of subscriptions to viewers, in return for which they perform the service of increasing the viewer's capacity to receive television signals, the content of which is not controlled by them.

In Fortnightly Corp. v. United Artists, 392 U.S. 390, 88 S.Ct. 2084, 20 L.Ed.2d

1176, the operations of cable television (CATV) were considered and described in the following language:

"The function of CATV systems has little in common with the function of broadcasters. CATV systems do not in fact broadcast or rebroadcast. Broadcasters select the programs to be viewed; CATV systems simply carry, without editing, whatever programs they receive. Broadcasters procure programs and propagate them to the public; CATV systems receive programs that have been released to the public and carry them by private channels to additional viewers."

Unquestionably, one consequence of the appellees' activities is to expose a number of New Mexicans to price advertising inducements to which they might not otherwise be exposed. But this is a merely incidental effect of an otherwise lawful activity, and does not, of itself, absent intention or purpose, make the activity "advertising." If several persons joined together to erect a sophisticated antenna system for the purpose of improving their television reception they would be doing no more nor less than the present appellees, and we cannot assume that the legislature intended to outlaw this type of conduct. Fortnightly Corp. v. United Artists, supra. It is fundamental that statutes will be construed so that their application will be neither absurd nor unreasonable. Montoya v. McManus, 68 N.M. 381, 362 P.2d 771.

Because, as noted, the appellees' position is more nearly comparable to one receiving information than disseminating it, and, in addition, it has contributed nothing directly which can be described as in any sense aiding or abetting, we conclude that they are not "advertising" within the meaning of § 67–7–13(m), and § 67–7–13.1, N.M.S.A. (Supp. 1967). For the same reason, neither do they share a "community of purpose" with Amarillo optometrists or broadcasters sufficient to render them liable as accessories. See State v. Ochoa, 41 N.M. 589, 72 P.2d 609.

In view of what has been said, the constitutionality of the statute requires no discussion.

The judgment of the court should be affirmed.

It is so ordered.

NOBLE, C. J., and MOISE, CARMODY and TACKETT, JJ., concur.