481 P.2d 89

**Felix TRUJILLO, Plaintiff-Appellant and Cross-Appellee,**

v.

**Julius ROMERO, d/b/a Julius Car Sales and Service, Defendant-Appellee and Cross-Appellant.**

**No. 9046.**

Supreme Court of New Mexico.

Feb. 15, 1971.

302.

Donald A. Martinez, Las Vegas, for appellant.

Roberto L. Armijo, Las Vegas, for appellee.

## OPINION

### STEPHENSON, Justice.

Plaintiff-Appellant (Trujillo) brought this replevin suit against Defendant-Appellee (Romero) seeking possession of an eight-wheeled-tandem trailer and damages for having been wrongfully deprived of its possession and use. Romero answered and counterclaimed for $186.16 as towing charges for the trailer and a tractor, claiming a lien on the trailer to secure payment. The trial court, sitting without a jury, found the issues in favor of Romero, but reduced his claim to $159.00 and ordered each party to pay his respective costs.

Trujillo appealed from the judgment and Romero cross-appealed from the court's failure to make an award to him of attorney's fees.

▆ Trujillo first asserts that Romero failed to prove that he held a certificate of convenience and necessity from the Corporation Commission, or its "class" if he held one. New Mexico statutes require that Romero be certificated in order for him to lawfully furnish wrecker service. Sections 64–27–4 and 64–27–8, N.M.S.A., 1953 Comp.

Romero's counterclaim alleged that at all times material to this lawsuit, he was engaged in the wrecker service business "operating under License No. 3662 of the State Corporation Commission * * *." This allegation was admitted and no proof was therefore required. License No. 3662 is not described in the pleadings as to its "class," nor is it alleged that the towing service in question was covered thereby.

We believe the fair intendment of the pleadings to be that Trujillo had a certificate of the proper class. The pleadings were so treated by the trial court. There was no evidence during the trial that Romero did not hold a certificate which covered the services rendered.

But, says Trujillo, the evidence at the trial drew the class of license into question, and Romero should have then demonstrated that he was properly certificated, which he failed to do.

It is true that a good deal of testimony was elicited concerning "classes," but in regard to the rate that should be applied, rather than in relation to types of licenses. That testimony could have been reasonably so understood in both this court and the trial court. The rates increase as the weight of the towed vehicle increases, and a point of controversy was whether the towed tractor and trailer combined weighed slightly less than 25,000 pounds or slightly more. If the former, the lower Class C rate would apply rather than the higher Class D rate applied by the trial court.

Because the class or type of Romero's certificate was not directly and specifically raised in the trial court, this issue will not be considered here. Perry v. Staver, 81 N M. 766, 473 P.2d 380 (Ct.App.) ; Barnett v. CAL M, Inc., 79 N.M. 553, 445 P.2d 974; Supreme Court Rule 20(1) [§ 21–2–1(20) (1), N.M.S.A., 1953 Comp.] This settled principle, coupled with Trujillo's admissions in his pleadings regarding Romero's certification which we have previously described, impels us to resolve issues relative to Romero's certification in his favor.

▆ Trujillo next asserts that the state police officer who called for Romero's wrecker service lacked authority to do so. It is undisputed that Trujillo's tractor-trailer was involved in a collision and came to rest in the highway headed away from Las Vegas, about fifteen miles distant, and a state police officer summoned Romero to the scene to tow the vehicle away, which he did. Other pertinent facts

are less clear. The trial court found that the state police officer authorized Romero "to tow Plaintiff's Tractor-Trailer from the scene of the collision." Thus the trial court has resolved the conflicting testimony by its findings. The fact that there may have been evidence which would have supported different findings does not require a reversal for failure to adopt Trujillo's requested finding. Measday v. Sweazea, 78 N.M. 781, 438 P.2d 525 (Ct.App.); Varney v. Taylor, 77 N.M. 28, 419 P.2d 234. And certainly there was substantial evidence to support the court's finding that the officer authorized the tow. It is fundamental that if there is substantial evidence in the record to support a finding, we are bound thereby. In deciding whether a finding has substantial support, we must view the evidence in the light most favorable to support the finding, and any evidence unfavorable to the finding will not be considered. Kerr v. Schwartz, 82 N.M. 63, 475 P.2d 457; Jones v. Anderson, 81 N.M. 423, 467 P.2d 995.

Although the court made no specific finding as to the destination of the tow authorized by the officer, it is, in support of the judgment, easily inferred to be Las Vegas from the court's award based on mileage to that town. Kerr v. Schwartz, supra; Jones v. Anderson, supra.

In construing and applying the statutes to which we now turn, we will consider that the police officer and no one else directed the tow be made from the point of the collision to Las Vegas.

Sections 64–18–49 and 64–18–50(a), N. M.S.A., 1953 Comp. are not, under the circumstances, applicable to this case, because the Trujillo vehicle was so disabled as to not be in violation of the former, and the latter does not in terms authorize the officer to call a wrecker. We agree with Trujillo that the officer's authority is not to be found in these two statutes.

The same is not true, however, of § 64–18–50(c), N.M.S.A., 1953 Comp. That section provides:

"No driver of any vehicle shall permit said vehicle to remain unattended on or adjacent to any public road, highway, or highway right of way of the state for a longer period than 24 hours without notifying the state police or sheriff's office of the county where said vehicle is parked or said vehicle shall be deemed abandoned. The state police or sheriff's officer may cause all such abandoned vehicles to be removed and the owner of the vehicle shall be required to pay all costs incident to the removal of said vehicle, Provided that wrecked vehicles may be removed at any time and without regard to the 24 hour period hereinbefore provided."

Trujillo asserts that the quoted section confers no authority on the police officer in this case because the vehicle was not left "unattended." He is contending that the provisions of the first sentence of the quoted statute concerning abandoned vehicles being "unattended" as a prerequisite for peace officers being authorized to see to their removal by the provisions of the second sentence, also restrict the authority of such officers under the proviso relating to wrecked vehicles. We do not agree. It is true that the evidence was to the effect that Trujillo "left a boy there, flagging there after the wreck" while he went for help. There is no indication that the vehicle was ever left unattended. The trial court's findings are silent on this subject.

Violation of the first sentence of § 64–18–50(c) is a penalty assessment misdemeanor which may result in imposition of a fine, as provided in § 64–22–4, N.M.S.A., 1953 Comp. (1969 Supp.). It is complete in itself insofar as creation of the misdemeanor is concerned. The proviso is entirely unrelated to that subject matter.

The portion of § 64–18–50(a) preceding the proviso deals solely with the subject of abandoned vehicles, and it is appropriate that a period of time should have been specified, i. e., twenty-four hours, as a standard by which to determine whether a

vehicle has been abandoned. This part of the statute makes no reference to wrecked vehicles. The proviso, on the other hand, makes no reference to abandoned vehicles but rather relates exclusively to wrecked vehicles. No passage of time is necessary to determine whether a vehicle has been wrecked.

In construing statutes we seek only the legislative intent. State ex rel. Clinton Realty Co. v. Scarborough, 78 N. M. 132, 429 P.2d 330; State v. Chavez, 77 N.M. 79, 419 P.2d 456. The entire act is to be read as a whole and each part shall be construed in connection with every other part so as to produce a harmonious whole. Winston v. New Mexico State Police Bd., 80 N.M. 310, 454 P.2d 967; State ex rel. Clinton Realty Co. v. Scarborough, supra.

The construction contended by Trujillo, viz., that so long as a wrecked vehicle is not left unattended a state police officer is unauthorized to arrange for its removal, would lead to strange results. A vehicle could presumably remain by, or even on, a highway indefinitely if attended. We feel sure that the legislature intended no such consequences. This would defeat the very purpose of the proviso which appears to be to facilitate expeditious removal of wrecked vehicles.

We should consider the consequences of various possible constructions and should not adopt a construction which would defeat the legislature's intentions, or lead to absurd results. Westland Development Co. v. Saavedra, 80 N.M. 615, 459 P.2d 141; Midwest Video v. Campbell, 80 N.M. 116, 452 P.2d 185; State v. Nance, 77 N.M. 39, 419 P.2d 242, cert. den. 386 U. S. 1039, 87 S.Ct. 1495, 18 L.Ed.2d 605.

We hold that the police officer in this case properly authorized removal of Trujillo's vehicle. The operative effect of the proviso appended to § 64–18–50(c) does not require the vehicle to have been unattended. Having come to this conclusion, it follows that Trujillo is "required to pay all costs incident to the removal of said vehicle" by the terms of the second sentence of § 64–18–50(c), supra.

Next, Trujillo asserts that he was overcharged, questioning the rates applied by Romero and the length of the tow. As we have said, if the tractor-trailer weighed over 25,000 pounds (as found by the trial court) the Class D rate applied by the court below was proper.

Romero testified that the weight of the tractor and trailer exceeded 25,000 pounds and the court's finding of weight is therefore supported by substantial evidence and the application of the Class D rate was correct.

As to the mileage of the tow, Romero testified that he had to tow past Manuelitas and on to Rociada in order to turn around, a total distance of twenty-nine miles from the point of pickup to Las Vegas. The trial court found the tow to have properly been twenty-nine miles, a finding supported by substantial evidence.

Finally, Trujillo complains of an award of $20.00 for one hour of extra labor and furnishing of extra equipment by Romero over and above that normally required to hook up the tow.

We agree with Trujillo's position as to the overcharge. Romero carried the burden of proof in regard to the propriety and correctness of his charges. We have searched the record and find no coherent explanation of what work, services or equipment were required or performed, or time spent, other than in the making of an ordinary hookup of the type covered by the Class D rate. The rate schedules do not provide for additional charges for ordinary hookups.

Romero has cross-appealed, asserting that the obligation in question was an open account and that the trial court therefore erred in not awarding him attorney's fees pursuant to § 18–1–37, N.M.S.A., 1953 Comp., which provides:

"In any civil action in the district court or small claims court to recover on an open account, the prevailing party *may* be

allowed a reasonable attorney fee set by the court, and taxed and collected as costs." (Emphasis supplied.)

Assuming, arguendo, that the obligation was an open account, we are cited to no authority holding it to be an abuse of discretion to fail to make such an award for attorney's fees. The trial court is affirmed upon the cross-appeal.

The trial court is directed to reduce the amount of Romero's judgment to $139.00. As in the trial court, costs will be divided. Here they will be equally shared.

It is so ordered.

COMPTON, C. J., and TACKETT, J., concur.